## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

PAUL LA SCHIAZZA

Case No. 22-CR-520

Hon. Robert W. Gettleman

United States District Court Judge

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PAUL LA SCHIAZZA'S
## MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

THE INDICTMENT ........................................................................................4

LEGAL STANDARD.......................................................................................5

ARGUMENT .................................................................................................7

A.    THE SUPREME COURT HAS AFFIRMED THAT A QUID PRO QUO IS REQUIRED TO VIOLATE 18 USC § 666. ...................................7

B.    THE GOVERNMENT'S BRIBERY CHARGE SHOULD BE DISMISSED. ............................................................................9

C.    THE GOVERNMENT'S CONSPIRACY CHARGE SHOULD BE DISMISSED. ..........................................................................12

CONCLUSION ..............................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Citizens United v. Fed. Election Comm'n,*
  558 U.S. 310 (2010) ............................................................................................9

*Hamling v. United States,*
  418 U.S. 87 (1974) ..............................................................................................6

*McCormick v. United States,*
  500 U.S. 257 (1991) ............................................................................................7

*McDonnell v. United States,*
  579 U.S. 550 (2016) ............................................................................................7

*Ocasio v. United States,*
  578 U.S. 282 (2016) ..........................................................................................12

*Skilling v. United States,*
  561 U.S. 358 (2010) ............................................................................................7

*Snyder v. United States,*
  144 S. Ct. 1947 (2024) ...............................................................................*passim*

*States v. Fischer,*
  64 F.4th 329 (D.C. Cir. 2023) .............................................................................4

*United States v. Allen,*
  10 F.3d 405 (7th Cir. 1993) .........................................................................10, 11

*United States v. Donagher,*
  520 F. Supp. 3d 1034 (N.D. Ill. 2021) ...............................................................6

*United States v. Gimbel,*
  830 F.2d 621 (7th Cir. 1987) ..............................................................................7

*United States v. Huet,*
  665 F.3d 588 (3d Cir. 2012 ............................................................................6, 7

*United States v. Jennings,*
  160 F.3d 1006 (4th Cir. 1998) ..........................................................9, 10, 11, 13

*United States v. Johnson*,
    621 F.2d 1073 (10th Cir. 1980) ........................................................................9

*United States v. Kelerchian*,
    937 F.3d 895 (7th Cir. 2019) .....................................................................12, 13

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000) ...............................................................................6

*United States v. Resendiz-Ponce*,
    549 U.S. 102 (2007)...............................................................................6, 9, 14

*United States v. Ring*,
    706 F.3d 460 (D.C. Cir. 2013)........................................................................13

*United States v. Snyder*,
    71 F. 4th 555 (7th Cir. 2023) ...................................................................*passim*

*United States v. Sun-Diamond Growers of California*,
    526 U.S. 398 (1999)......................................................................2, 7, 8, 9

*United States v. White*,
    610 F.3d 956 (7th Cir. 2010) ............................................................................6

*Wooden v. United States*,
    595 U.S. 360 (2022)..........................................................................................3

**Statutes**

18 U.S.C. § 201 ......................................................................................................2

18 U.S.C. § 201(b) ............................................................................................8, 9

18 U.S.C. § 201(c) ................................................................................................9

18 U.S.C. § 666.............................................................................................*passim*

18 USC § 666(a)(1)(B) and (a)(2) ...................................................................4, 12

18 USC §§ 666(a)(2) and 2 ...................................................................................4

18 USC §§ 1952(a)(3) and 2 .................................................................................5

**Other Authorities**

Sixth Amendment ................................................................14

House Bill 1811 ...........................................................5, 11

Senate Bill 1839 .........................................................5, 11

**<u>Preliminary Statement</u>**

During the time he was President of AT&T Illinois, defendant Paul La Schiazza and his government relations team responded to requests from Illinois legislators to consider various individuals and entities for employment or contractual positions with AT&T. These legislators included the former Speaker of the Illinois House of Representatives, Michael Madigan. Some of these individuals and entities received employment or contract work with AT&T, and some did not. These kinds of requests are commonplace, and they persist to this day.

The government has picked one instance—AT&T's hiring of former Illinois Representative Eddie Acevedo after Michael McClain asked AT&T to consider it—and alleges that Mr. La Schiazza and AT&T did it to bribe Madigan. The government focuses on this instance because it happened around the time when legislation related to AT&T's carrier of last resort obligations, or "COLR," was pending in Springfield. However, the Indictment fails to allege that AT&T's hiring of Acevedo was a quid pro quo for some specific official action by Madigan in support of COLR; that is, that Mr. La Schiazza understood and agreed with Madigan that, in exchange for AT&T hiring Acevedo, Madigan would take some official action to advance the COLR. Nor is there any allegation as to what specific official action Madigan allegedly agreed to take with respect to COLR in exchange for the alleged bribe. Instead, the Indictment alleges merely that Mr. La Schiazza and

AT&T intended that Madigan be "influenced and rewarded in connection with" Madigan's official actions.

In defending its decision to bring these charges, the government argued for years that 18 U.S.C. § 666 criminalized both gratuities and bribes and did not require proof of a quid pro quo. After the government indicted this case—the Seventh Circuit made clear that "[a] bribe requires a quid pro quo—an agreement to exchange this for that, to exchange money or something else of value for influence in the future." *United States v. Snyder*, 71 F. 4th 555, 579 (7th Cir. 2023). Yet the government continued to press its position that no proof of a quid pro quo was required to convict under Section 666. Ultimately, in *Snyder v. United States*, the Supreme Court rejected the government's interpretation of Section 666, holding that the statute applies only to bribes, and that bribery "requires that the official have a corrupt state of mind and accept (or agree to accept) the payment intending to be influenced in the official act." *Snyder v. United States*, 144 S. Ct. 1947, 1955 (2024). The Court also held that Section 666 was modeled on the federal bribery statute, 18 U.S.C. § 201, and shared the same "defining characteristics." *Id*.; *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999*)* (holding that bribery requires a "*quid pro quo* – a specific intent to give or receive something of value *in exchange* for an official act."). In other words, the government must plead and prove a quid pro quo, which it did not do.

The government also took the position that the "corruptly" element of the statute requires proof of only an intent to influence a government official. The government was operating under this interpretation of the statute when it indicted this case. ECF No. 55 at 29, 31-32. *Snyder*, however, confirmed that a corrupt state of mind and intent to influence are two separate and independent elements that must be proven to obtain a Section 666 conviction. 144 S.Ct. at 1955 ("Section 666 shares the defining characteristics of § 201(b)'s bribery provision: the corrupt state of mind and the intent to be influenced in the official act."). Therefore, when the government indicted this case, it was operating under a statutory interpretation that wrongly conflated two separate elements of the offense. Moreover, nothing in the indictment pleads that Mr. La Schiazza acted "corruptly," that is with the understanding his acts were unlawful.[1]

---

[1] When giving meaning to the separate "corruptly" mens rea element, this Court must interpret the term narrowly to mean "understanding that doing so is unlawful." Post-*Snyder* the government has instead proposed that the term means "understanding that doing so is unlawful or wrongful." *See* ECF 61 at 7. This Court should reject the government's attempt to inject a "wrongful" mens rea into Section 666. The narrow interpretation of "corruptly" only meaning "understanding that doing so is unlawful" best comports with the historic roots of common law bribery and applicable interpretative principles, such as the rule of lenity, or as the *Snyder* majority phrases it, "fair notice." *Snyder*, 144 S. Ct. at 1959 (discussing that interpreting corruptly to mean "wrongful" is "no guidance at all" and fails to provide fair notice); *id.* at 1960 (Gorsuch, J., concurring) (the "ancient rule of lenity" commands courts to interpret a statute "not for the prosecutor but for the presumptively free individual"); *Wooden v. United States*, 595 U.S. 360, 379 (2022) (Kavanaugh, J., concurring) (fair notice can be addressed by "require[ing] proof that

Because the government has failed to plead a quid pro quo or the separate mens rea element, Counts One and Two of the indictment fail as a matter of law.[2]

## **The Indictment**

The government filed a five-count Indictment based on a single set of facts. Count One charges that Mr. La Schiazza conspired with Madigan, Michael McClain and others to corruptly solicit or give, or agree to solicit or give Eddie Acevedo $2,500 a month, intending for Madigan, as an agent of the State of Illinois, to be influenced or rewarded in connection with the COLR legislation in violation of 18 USC § 666(a)(1)(B) and (a)(2). ECF 1 at 5.

Count Two charges that Mr. La Schiazza offered and agreed to pay Eddie Acevedo $2,500 a month for the benefit of Madigan and Acevedo, intending to influence and reward Madigan as an agent of the State of Illinois in connection with the COLR legislation in violation of 18 USC §§ 666(a)(2) and 2. ECF 1 at 14.

---

the defendant was aware that his conduct was unlawful"); *States v. Fischer*, 64 F.4th 329, 353 (D.C. Cir. 2023), *vacated on other grounds and remanded*, 144 S. Ct. 2176 (2024) (Walker, J., concurring) (explaining common law bribery required knowledge of the act's illegality and rejecting government's proffered "wrongful purpose" definition of "corruptly" in a federal obstruction statute as potentially criminalizing lawful activity).

[2] Mr. La Schiazza has contemporaneously filed a Supplemental Brief on the effect of *Snyder* on the *Santiago* proffer and Motions in Limine. That brief more fully sets forth the post-*Snyder* elements of the Section 666 offense and those arguments are adopted and incorporated in full in this motion.

The Indictment alleges generally that the alleged official act was "COLR legislation." ECF No. 1 at 5 (Count One), 14 (Count Two). No specific act with respect to "COLR legislation" in Count Two is identified in the indictment, *see id.* at 14, so it is unclear from the indictment specifically what alleged "official act" Mr. La Schiazza allegedly bribed Madigan to take with respect to COLR. As to Count One, the Indictment alleges that the Speaker's office "requested a complete roll call on Senate Bill 1839, which included the COLR legislation." ECF No. 1 at ¶ 17(o). It also alleges that Madigan voted in favor Senate Bill 1839, voted in favor of an amendment to House Bill 1811 adding COLR to that bill, and voted to override the Governor's veto of House Bill 1811. *Id.* at ¶ 17(p)-(r). The Indictment does not allege facts establishing a causal connection between the legislative actions undertaken by Madigan and the benefits he allegedly received from AT&T, much less an express agreement by Madigan to undertake these acts in exchange for Mr. La Schiazza having AT&T offer Acevedo a consulting job. [3]

## Legal Standard

To be legally sufficient, an indictment must: (1) state all the elements of the crime charged; (2) adequately inform the defendant of the nature of the charges so

---

[3] Counts Three through Five charge that Mr. La Schiazza used a facility in interstate commerce to violate Illinois criminal statutes prohibiting bribery and legislative misconduct in violation of 18 USC §§ 1952(a)(3) and 2. Mr. La Schiazza does not move to dismiss these counts so they are not discussed further in this Memorandum of Law.

that he may prepare a defense; and (3) allow the defendant to plead the judgment as a bar to any future prosecutions. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted). But where the statute fails to set forth all the elements necessary to constitute the offense, indictments "must do more than restate the language of the statute." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109-10 (2007). "[W]hen one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." *United States v. Donagher*, 520 F. Supp. 3d 1034, 1041 (N.D. Ill. 2021) (quoting *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000)). This is because absent the implicit element, the indictment would fail "to provide fair notice to [the] defendant[] and [] ensure that any conviction [] arise[s] out of the theory of guilt presented to the grand jury." *Resendiz-Ponce*, 549 U.S. at 109-10.

Although a court's review of the facts at this stage is limited, the court "need not blindly accept a recitation in general terms of the elements of the offense." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012), *abrogated on other grounds*

6

*by Rehaif v. United States*, 139 S. Ct. 2191 (2019). Even if an indictment recites necessary elements in boilerplate wording, "if the specific facts that are alleged fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation, the indictment fails to state an offense." *Id*. (citations omitted); *see also United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir. 1987) ("In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating.").

## <u>Argument</u>

### A.    The Supreme Court Has Affirmed that a Quid Pro Quo is Required to Violate 18 USC § 666.

The Supreme Court has consistently limited the government's use of overbroad and vague statutes to ensure that they reach only corrupt conduct and not ordinary interactions with public officials. *See e.g.*, *Snyder*, 144 S.Ct. at 1953; *McDonnell v. United States*, 579 U.S. 550, 567 (2016); *Skilling v. United States*, 561 U.S. 358, 408-09 (2010); *Sun-Diamond*, 526 U.S. at 414; *McCormick v. United States*, 500 U.S. 257, 274 (1991). Most recently, *Snyder* interpreted the scope of conduct covered by Section 666 narrowly, explaining that it "prohibits state and local officials from accepting *bribes* that are promised or given before the official act" and not gratuities. *Snyder*, 144 S. Ct. at 1951 (emphasis in original). The Court also made clear that a bribe requires a quid pro quo: "[a] state or local official can violate § 666 when he accepts an up-front payment for a future official act or agrees

to a future reward for a future official act." *Id*. at 1959; *see also id.* at 1962 (Jackson, J., dissenting) (Section 666 requires a quid pro quo, *i.e.*, "for a payment to constitute a bribe, there must be an upfront agreement to exchange the payment for taking an official action."). Even before the Supreme Court's decision—but after the government indicted this case—the Court of Appeals for the Seventh Circuit made clear that "[a] bribe requires a *quid pro quo* – an agreement to exchange this for that, to exchange money or something else of value for influence in the future." *Snyder*, 71 F. 4th at 579.

Despite the Seventh Circuit ruling, the prosecution has insisted that "the inclusion of a quid pro quo requirement" was not "appropriate in the context of § 666." ECF No. 55 at 38. The Supreme Court ended the inquiry in its ruling in *Snyder*. There, the Supreme Court made clear that Section 666 was modeled on the federal bribery statute, 18 U.S.C. § 201(b), and shared the same "defining characteristics." *Snyder*, 144 S. Ct. at 1955; *see Sun-Diamond Growers*, 526 U.S. at 404-05 (holding that Section 201(b) bribery requires a "*quid pro quo* – a specific intent to give or receive something of value *in exchange* for an official act."); *see also Snyder*, 144 S. Ct. at 1962 (Jackson, J., dissenting) ("There is no dispute that § 666 criminalizes bribes. [] This Court has also been clear about what a bribe requires: a *quid pro quo*. A *quid pro quo* means a specific intent to give or receive something of value *in exchange* for an official act.") (internal citations omitted).

8

"[A] good will gift to an official to foster a favorable business climate, given simply with the 'generalized hope or expectation of ultimate benefit on the part of the donor,' does not constitute a bribe." *United States v. Jennings*, 160 F.3d 1006, 1013 (4th Cir. 1998) (quoting *United States v. Johnson*, 621 F.2d 1073, 1076 (10th Cir. 1980)); *see also Sun-Diamond Growers*, 526 U.S. at 405-06 (18 U.S.C. § 201(c) does not criminalize acts taken "to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future"). Simply put, "ingratiation and access . . . are not corruption." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 360 (2010). To avoid sweeping this innocent conduct into the ambit of federal anti-bribery statutes, the Supreme Court has required the government to identify a quid pro quo—that is, "a specific intent to give or receive something of value *in exchange* for an official act." *Sun-Diamond Growers*, 526 U.S. at 404-05 (discussing 18 U.S.C. § 201(b)).

**B.      The Government's Bribery Charge Should be Dismissed.**

When it indicted this case, the government's persistent position was that the statute did not include a quid pro quo element. Thus, the Indictment does not allege that Mr. La Schiazza gave, offered, or agreed to hire Acevedo in exchange for Madigan's agreement to take some official action to advance the COLR legislation. Although the Indictment tracks the language of Section 666, that language alone is insufficient to state all of the essential elements of the statute. *See Resendiz-Ponce*,

9

549 U.S. at 109-10. As noted, bribery charges under Section 666 must allege a quid pro quo – that is, a specific intent to give or receive something of value *in exchange for* an official act. *Snyder*, 144 S. Ct. at 1951 ("bribes are payments made or agreed to *before* an official act in order to influence the official with respect to that future official act"). The Indictment fails to allege this essential quid pro quo element.

The government alleges that AT&T Illinois, at Mr. La Schiazza's direction, hired Acevedo at Madigan's recommendation and that COLR was later enacted with Madigan's support. That is not enough. The Indictment fails to allege that Madigan ultimately supported COLR in exchange for AT&T hiring Acevedo, or that Mr. La Schiazza reached an agreement with Madigan that he would support COLR in exchange for AT&T hiring Acevedo. ECF No. 1 at ¶ 11. Nor does it allege what specific official act(s) Madigan supposedly agreed to undertake in exchange for the alleged bribe. In other words, no agreement of a "this" in exchange for "that" is alleged in the indictment. Absent such allegations, the Indictment fails to allege the essential elements of Counts One or Two, and those counts should be dismissed.

"Vague expectations of some future benefit" are not sufficient. *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993). For example, in *Jennings*, the Fourth Circuit reviewed the district court's jury instructions, which "repeatedly charged that it was sufficient if [the bribor] paid [the bribee] to influence [the bribee] 'in connection with' or 'in reference to' [a company's] business." *Jennings*, 160 F.3d

at 1022.[4]  The *Jennings* court explained that the jury instructions "could have described a situation which [the bribor] paid [the bribee] with a '[v]ague expectation[] of some future benefit." *Id.* (quoting *Allen*, 10 F.3d at 411).  As a result, the jury instructions "did not necessarily require the jury to find that [the bribor] had the intent to engage in a quid pro quo." *Id.*  The Indictment here is just as vague.  The government says that Mr. La Schiazza intended to influence or reward Madigan in connection with COLR legislation, but it fails to allege Madigan agreed to take an official act in exchange for AT&T's hiring of Acevedo.[5]

---

[4] *Jennings* was decided before the Supreme Court addressed the elements of an offense under 18 U.S.C. § 666 in *Snyder*, and while *Snyder* controls the elements of such an offense, some aspects of *Jennings* remain instructive.

[5] The indictment is also deficient as it fails to sufficiently identify the alleged "official act" exchanged for the bribe.  As stated above, the indictment alleges generally that the alleged official act was "COLR legislation."  ECF No. 1 at 5 (Count One), 14 (Count Two).  No specific act with respect to "COLR legislation" in Count Two is identified in the indictment, *see id.* at 14, so it is unclear from the indictment specifically what alleged "official act" Mr. La Schiazza allegedly bribed Mr. Madigan to take with respect to COLR.  As to Count One, in the alleged overt acts supporting the alleged conspiracy, the government alleges that Mr. Madigan "voted in favor of Senate Bill 1839"; "after the COLR legislation had been added as an amendment to House Bill 1811, Madigan voted in favor of the amendment to House Bill 1811"; and "Madigan voted to override the Governor's veto of House Bill 1811."  *Id.* at 11.  But again, Count One does not include any allegation regarding what specific "official act" Mr. La Schiazza allegedly asked Mr. Madigan to take, or conspired to get Mr. Madigan to take, with respect to the "COLR legislation" in exchange for offering Mr. Acevedo a consulting job.

Nor does the indictment allege that Mr. La Schiazza undertook any act alleged in the indictment with the knowledge that doing so was unlawful. The Indictment thus does not allege the separate "corruptly" mens rea element either.[6]

Therefore, for both these reasons, the Indictment necessarily fails to allege that Mr. La Schiazza agreed to a corrupt exchange in violation of Section 666.

## C. The Government's Conspiracy Charge Should be Dismissed.

Premised on the same conduct, Count One charges Mr. La Schiazza with conspiring to, among other things, offer bribes under § 666(a)(1)(B) and (a)(2) in violation of § 371. "[T]he fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all the elements of [the underlying substantive] criminal offense." *United States v. Kelerchian*, 937 F.3d 895, 915 (7th Cir. 2019) (quoting *Ocasio v. United States*, 578 U.S. 282, 287 (2016)). "[E]ach conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." *Id*. (quoting *Ocasio*, 578 U.S. at 292). As discussed, a quid pro quo is an essential element of a Section 666 charge. Thus, to charge Mr. La Schiazza with conspiring to violate Section 666, the government must allege that he knew of the object of the conspiracy—*i.e.* that AT&T hired Acevedo *in exchange for* Madigan's support of COLR legislation—

---

[6] Nor would the allegations in the indictment be sufficient to satisfy the government's (incorrect) proposed "unlawful or wrongful" definition either.

and agreed to accomplish its unlawful objective. *Id*. at 914. Count One includes no such allegation.

Count One alleges that Madigan requested a roll call on COLR legislation and then cast three votes in favor of COLR. ECF No. 1 at ¶ 17. In short, the government identifies a thing of value on the one hand (Acevedo's engagement) and an act on the other (Madigan's support of COLR legislation), and calls it a day. But that is not enough. The government must also allege that the benefit was *in exchange for* the official act. The government has failed to do so, and therefore has failed to allege that La Schiazza intended or agreed to hire Acevedo in exchange for Madigan's support for COLR or any other legislation.

Count One cites various emails among AT&T employees discussing whether AT&T will "get credit from the powers that be" if Acevedo is engaged indirectly as a consultant through an intermediary, instead of directly as a lobbyist or consultant. ECF No. 1 at ¶ 17. But this language does not evidence an exchange. *See United States v. Ring*, 706 F.3d 460, 463 (D.C. Cir. 2013) ("In order to more effectively communicate their clients' policy goals, lobbyists often seek to cultivate personal relationships with public officials."). Moreover, it is not unlawful for a constituent to generally seek to generate goodwill. *Jennings*, 160 F.3d at 1013 (a goodwill gift with hope for future benefit is not illegal).

And again, no facts alleged in Count One set forth that Mr. La Schiazza was acting with an understanding that his actions were illegal. Thus, the government has not pleaded the "corruptly" mens rea element.

For these reasons, Count One should be dismissed.

## Conclusion

The government has not alleged AT&T hired Acevedo *in exchange for* a specific official act, *i.e.*, that Mr. La Schiazza bribed Madigan. Indeed, the Indictment does not allege that Madigan even knew of AT&T's hiring of Acevedo or AT&T's desire to "get credit" for the hiring. Without any factual allegations supporting the existence of a quid pro quo or that Mr. La Schiazza understood that he was acting unlawfully in offering an exchange to Madigan, the Indictment violates Mr. La Schiazza's rights to indictment by a grand jury and protection against double jeopardy, as well as his Sixth Amendment right to be informed of the nature and cause of the accusations against him. *See Resendiz-Ponce*, 549 U.S. at 108. Therefore, this Court should dismiss Counts One and Two in full.[7]

---

[7] Mr. La Schiazza is contemporaneously filing other briefs governed by different legal standards. This Court should conclude the motion to dismiss standard is met, but if it does not, it does not preclude this Court from deciding these other motions in Mr. La Schiazza's favor or crafting its eventual instructions to the jury as Mr. La Schiazza proposes, as these items are governed by different legal standards than a motion to dismiss.

Dated: July 23, 2024

Respectfully submitted,

Defendant Paul La Schiazza

By: /s/ *Tinos Diamantatos*

Tinos Diamantatos
Megan R. Braden
Alborz Hassani
Morgan, Lewis & Bockius LLP
110 North Wacker Drive
Chicago, IL 60606-1511
T: (312) 324-1000
F: (312) 324-1001
tinos.diamantatos@morganlewis.com
megan.braden@morganlewis.com
al.hassani@morganlewis.com

John C. Dodds (admitted pro hac vice)
Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103-3007
T: (215) 963-5000
F: (215) 963-5001
john.dodds@morganlewis.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on July 23, 2024, using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Tinos Diamantatos*